61 A.3d 150

D.N., PLAINTIFF–APPELLANT, v. K.M.,
DEFENDANT–RESPONDENT.

———

K.M., PLAINTIFF–RESPONDENT, v. D.N.,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Decided January 24, 2013—Argued December 11, 2012.

Before Judges LIHOTZ, OSTRER [1] and KENNEDY.

*Ronald G. Lieberman* argued the cause for appellant (*Adinolfi & Lieberman,* attorneys; *Mr. Lieberman,* of counsel and on the briefs).

*D. Ryan Nussey* argued the cause for respondent (*Klineburger & Nussey,* attorneys; *Mr. Nussey,* of counsel and on the briefs).

The opinion of the court was delivered by

LIHOTZ, J.A.D.

These back-to-back matters, consolidated for the purpose of this opinion, challenge Family Part orders in two cases arising under the Prevention of Domestic Violence Act (the Act), *N.J.S.A.* 2C:25–17 to –35. We will recite the common facts and history of the matters, then address the legal issues presented on appeal.

These unmarried parties, D.N. and K.M., resided together and have a teenage child. In contemplation of the termination of their relationship, they executed an October 25, 2011 consent order. The parties agreed to share joint legal custody of their child and named K.M. as the parent of primary residence. D.N. agreed to attend counseling with the child and, otherwise, to enjoy parenting

---

[1] Judge Ostrer did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. *R.* 2:13–2(b).

time supervised by her adult son from a prior relationship. K.M. was granted exclusive possession of the previously shared Evesham Township residence, as he alone held title to the realty, and D.N. affirmed she would provide a convenient date and time to remove her belongings.

On December 7, 2011, K.M. filed a complaint under the Act, alleging D.N. committed acts constituting assault and harassment on December 6, 2011 (K.M.'s case). The complaint listed prior domestic violence cases involving the parties, which had been dismissed, and requested the entry of a temporary restraining order (TRO) pending final consideration of his request that the restraints be made permanent.

The following day, D.N. filed a complaint under the Act (D.N.'s case). She alleged that on December 6, 2011, K.M. committed acts constituting assault, and she too sought entry of a TRO. D.N.'s complaint also included references to prior incidents of domestic violence, occurring between April 10 and September 11, 2011.

In separate ex parte proceedings, different Family Part judges reviewed the parties' respective complaints and requests for TROs. After considering the complaints, the judges entered orders, including temporary restraints, and the cases were listed for trial on the same day before a single judge.

On December 22, 2011, K.M. appeared with counsel and D.N. appeared representing herself. The judge considered the related matters in the same proceeding. K.M. testified first in support of his claims, and when he concluded his case, D.N. responded and testified in support of the allegations in her complaint.

After hearing the testimony of each party, the trial judge delivered an oral opinion. In D.N.'s case, the judge concluded the evidence was insufficient to support the claim of assault and, therefore, dismissed D.N.'s complaint. Addressing K.M.'s case, the judge concluded D.N.'s conduct constituted harassment and there was a need to enter a final restraining order (FRO) to

prevent future domestic violence. Two orders were entered memorializing these determinations. D.N. appealed from each order.

D.N. challenges the judge's findings and conclusions, specifically maintaining her evidence proved she suffered an assault and contending the evidence in K.M.'s case failed to show the necessity of entering an FRO for protection from future abuse. Moreover, D.N. presents procedural challenges, arguing

> the trial court's conduct of the final hearing[s] brings into sharp focus the need ... to determine once and for all that a defendant in a domestic violence hearing is entitled to counsel paid by the taxpayers of the State of New Jersey and that firm, standardized guidelines need to be established for a trial court to follow before a defendant can be considered to have made a knowing and intelligent waiver of counsel at the final hearing in a domestic violence matter.

D.N. advances a similar argument in the appeal of the order dismissing her case. She maintains a plaintiff-victim in a domestic violence case is entitled to counsel paid by the taxpayers of the State of New Jersey and asserts standardization of court procedures must be formulated when considering a waiver of counsel.

■ In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings. *Cesare v. Cesare*, 154 *N.J.* 394, 411–12, 713 *A.2d* 390 (1998). In *Cesare, supra*, the Supreme Court placed trust in the "expertise" of Family Part judges and their ability to assess evidence of domestic violence and determine whether a restraining order is necessary. 154 *N.J.* at 413, 416, 713 *A.2d* 390. Similar deference is accorded factual findings of those judges following an evidentiary hearing. *Id.* at 411–12, 713 *A.2d* 390 (citations omitted). In addressing the function of the appellate court, the Court held: "[A]n appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" *Id.* at 412, 713 *A.2d* 390 (alteration in original) (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 *N.J.* 474, 484, 323 *A.2d* 495 (1974)).

We will address D.N.'s challenges raised in these two matters, reviewing whether the judge erred in entering the orders, including whether the court's findings are supported by the evidence; whether indigent litigants in domestic violence matters have a due process entitlement to appointed counsel; and whether the trial judge adequately inquired of D.N. to confirm she did not desire legal representation to assist in these trials.

Here, D.N. testified she stopped her car at the child's bus stop and then left when K.M. appeared in his vehicle. K.M. followed her and the two pulled into a Walmart parking lot, where an argument ensued. K.M. accused D.N. of taking the child's cellular telephone, which she denied. K.M. shouted he was going to call the police and D.N. climbed onto the running board of his truck. Although K.M. stated he was leaving, D.N. did not step off the truck. K.M. moved the vehicle. As a result, D.N. asserted she was struck by the truck's side mirror and fell off the truck. K.M. agreed D.N. stepped on his truck, but disputed D.N. was injured, stating he began to pull away slowly and D.N. just stepped off the truck. As he pulled away, he viewed D.N. in his rear-view mirror, standing in the parking lot with her hands raised in the air. D.N. did not suggest she required medical attention or explain the nature of any injury.

The judge noted the parties offered different versions of the events and concluded there was "insufficient evidence" to sustain a finding D.N. suffered an assault. The judge stated: "I don't think that there was any evidence that she was injured or that she was struck by the side mirror or anything of that nature[.]" The trial judge therefore dismissed D.N.'s case.

Regarding K.M.'s allegations, the judge found D.N. went to K.M.'s home, notwithstanding the prior consent order granting him exclusive possession of the home. When K.M. spied her peeking in his window, he opened the front door and demanded she leave. The judge found D.N. then pushed K.M., and "punched him, smacked him in the face at least several times." The judge noted D.N., by her own admission, violated the provision of the

consent order that granted K.M. exclusive possession of the residence. The court placed particular emphasis on the fact D.N. had recently executed the consent "order knowing full well that the exclusive possession of the property was in [K.M.]'s [control].... She went to the house *no matter what*[.]"

The judge determined D.N.'s conduct met the elements of harassment. Further, the parties' past history of domestic violence justified the need for protection from future abuse by entry of an FRO pursuant to the Act.

While the judge could have stated more, giving the deference we must, we are satisfied the findings sufficiently support the court's conclusions. The judge's comments state D.N. failed to prove she suffered an injury, which implied her testimony was not credible, and that she failed to sustain her allegations of assault. Accordingly, the complaint in D.N.'s case was properly dismissed.

■ On the other hand, the judge believed K.M.'s assertion of being slapped by D.N. Such conduct fits squarely within the requirements of the harassment statute, which provides in relevant part: "[A] person commits a petty disorderly persons offense if, with purpose to harass another, [s]he ... [s]ubjects another to striking, kicking, shoving, or other offensive touching[.]" *N.J.S.A.* 2C:33–4b. Because the record supports the trial judge's findings that K.M. sufficiently proved, by a preponderance of the credible evidence, a predicate act of domestic violence had occurred and that there was a need to enter a restraining order to provide protection, *Silver v. Silver,* 387 *N.J.Super.* 112, 125–27, 903 *A.*2d 446 (App.Div.2006); *N.J.S.A.* 2C:25–29b, we need not disturb the FRO entered in K.M.'s case.

■ We next focus on D.N.'s contention suggesting the trial judge erred in allowing the trials to proceed at a time D.N. did not have the assistance of counsel. D.N. argues the trial judge failed to determine whether she fully understood the impact of the proceedings and her stated waiver of counsel. Further, D.N. maintains:

This case brings into sharp focus the need for this [c]ourt to pick up where the [c]ourt left off in *Crespo v. Crespo*, 408 *N.J.Super.* 25, 45 [972 *A.*2d 1169] (App.Div.2009), *aff'd* [*o.b.*,] 201 *N.J.* 207 [989 *A.*2d 827] (2010), and find that "the imposition of a restraining order of the scope authorized by the Act constitutes a matter of sufficient magnitude to warrant the appointment of counsel[.]"

To provide context for these intertwined issues, we must recite what occurred prior to the commencement of the trials. On the trial date, following the entry of counsel's appearance on behalf of K.M., but prior to the presentation of evidence, this colloquy occurred between the trial judge and D.N.:

THE COURT: Do you understand you have the right to have a lawyer?

[D.N.]: Yeah.

THE COURT: You've got a lawyer on the other side.

[D.N.]: Okay.

THE COURT: What's your position? Do you wish time to see a lawyer?

[D.N.]: No.

THE COURT: Do you understand the consequences? You've been here so many times before. You know what the consequences are if I find you guilty of an act of domestic violence?

[D.N.]: Yes, Your Honor.

THE COURT: What are they? What are the consequences?

[D.N.]: Oh. There's two—there's two cases.

. . . .

THE COURT: I know that, but ... he's represented.

. . . .

[D.N.]: Oh, okay.

THE COURT: So, I'm asking you[,] if I find you guilty of an act of domestic violence[,] do you know what the consequences are?

[D.N.]: I don't believe I'd be found guilty.

THE COURT: Okay. Your name would go down in a registry. You have to pay a fine. You have to be fingerprinted and photographed. Okay?

[D.N.]: Uh-huh.

THE COURT: And, there might be some other counseling requirements.

[D.N.]: Okay.

THE COURT: So, I always advise people that aren't represented that are defendants or—

[D.N.]: Thank you.

THE COURT:—co-plaintiffs,—

[D.N.]: Yes.

THE COURT:—okay?

[D.N.]: Yeah.

THE COURT: So, you're ready to proceed in this case?

[D.N.]: Yes.

Before addressing the propriety of the judge's examination of D.N. with respect to her decision to proceed as a self-represented litigant, we consider the question of whether there is a right to counsel in domestic violence matters, and particularly, whether counsel should be appointed for indigent litigants presenting or defending domestic violence complaints. As D.N. notes, the question has been raised previously, but to date, has not been squarely addressed by the courts.

In *Crespo, supra*, the defendant sought to vacate an FRO, principally arguing the Act was unconstitutional because it "converted what ought to be a criminal prosecution into a civil proceeding, thus depriving the parties of their right to a jury trial." 408 *N.J.Super.* at 31 [972 *A.*2d 1169]. The defendant also argued he suffered a due process violation because the Act "fail[ed] to permit ... a right to counsel." *Ibid.* We declined to review this question, stating "[t]he record does not reflect that [the] defendant ever sought the appointment of counsel prior to or during the adjudication of this domestic violence matter. Accordingly, in the present setting, the issue is purely academic." *Id.* at 45 [972 *A.*2d 1169].

As a general rule, the assistance of appointed counsel guaranteed by the Sixth Amendment for criminal matters applies to civil proceedings, if the defendant's personal freedom is at stake. *See Lassiter v. Dep't of Soc. Servs.*, 452 *U.S.* 18, 25, 101 *S.Ct.* 2153, 2158, 68 *L.Ed.*2d 640, 648 (1981) (noting the right to appointed counsel "has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation"). *See also Rodriguez v. Rosenblatt*, 58 *N.J.* 281, 295, 277 *A.*2d 216 (1971) (holding, in municipal court, "as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost"); *State v. Ashford*, 374 *N.J.Super.* 332, 337, 864 *A.*2d

1122 (App.Div.2004) (holding an indigent defendant is entitled to the assignment of counsel for purposes of prosecution for contempt of a domestic violence order, which could result in incarceration if found guilty).

When examining the right to appointed counsel in matters not arising under the Criminal Code, the Court has linked the need for counsel with the consequences of incarceration or liberty deprivation. For example, in *Rodriguez, supra,* the Court wrote:

> The practicalities may necessitate the omission of a universal rule for the assignment of counsel to all indigent defendants and such omission may be tolerable in the multitude of petty municipal court cases *which do not result in actual imprisonment or in other serious consequence* such as the substantial loss of driving privileges.

[58 *N.J.* at 295, 277 *A.*2d 216 (emphasis added).]

Also, in *State v. Moran,* the Court held "[t]he loss of driving privileges for a reckless-driving conviction constitutes a consequence of magnitude that triggers certain rights, such as the right to counsel." 202 *N.J.* 311, 325, 997 *A.*2d 210 (2010) (citations omitted). The Court explained the inclusion of traffic offenses affecting a license to drive was a consequence of magnitude because a license " 'is nearly a necessity,' as it is the primary means that most people use to travel to work and carry out life's daily chores." *Ibid.* (quoting *State v. Hamm,* 121 *N.J.* 109, 124, 577 *A.*2d 1259 (1990), *cert. denied,* 499 *U.S.* 947, 111 *S.Ct.* 1413, 113 *L.Ed.*2d 466 (1991)). *See also State v. Hrycak,* 184 *N.J.* 351, 362, 877 *A.*2d 1209 (2005) (holding defendants in DWI cases have a right to counsel because they face a "consequence of magnitude").

In municipal court matters, the Court has provided guidelines defining "consequences of magnitude." *See* Guidelines for Determination of Consequence of Magnitude, Pressler & Verniero, *Current N.J. Court Rules,* Appendix to Part VII to *R.* 7:3–2 at 2465 (2013) (the Guidelines). In addition to possible incarceration and loss of driving privileges, the Guidelines direct judges to consider "[a]ny monetary sanction imposed by the [municipal] court of $750 or greater in the aggregate, ... including fines, costs, restitution, penalties and/or assessments." *Ibid.* The Guide-

lines also note counsel may be assigned in instances where a party's competence is in issue. *Ibid. See also State v. P.E.*, 284 *N.J.Super.* 309, 315–16, 664 *A.*2d 1301 (Law Div.1994).

A litigant in civil proceedings is entitled to a fair hearing, imbued with the protections of due process. *See A.B. v. Y.Z.*, 184 *N.J.* 599, 604, 878 *A.*2d 807 (2005); *H.E.S. v. J.C.S.*, 175 *N.J.* 309, 321–23, 815 *A.*2d 405 (2003). As the United States Supreme Court has recognized, the due process guarantee expressed in the Fourteenth Amendment to the United States Constitution, *U.S. Const.* amend. XIV, § 1, includes "the requirement of 'fundamental fairness' " in a legal proceeding. *Lassiter, supra,* 452 *U.S.* at 24, 101 *S.Ct.* at 2158, 68 *L.Ed.*2d at 648. We observed in *Crespo, supra,* the New Jersey Supreme Court has interpreted Article I, Paragraph 1 of the State Constitution as " 'protect[ing] against injustice and, to that extent, protect[ing] values like those encompassed by the principle[ ] of due process[,]' " 408 *N.J.Super.* at 34, 972 *A.*2d 1169 (quoting *Doe v. Poritz,* 142 *N.J.* 1, 99, 662 *A.*2d 367 (1995)), even though the provision "does not expressly refer to the right to due process of law[.]" *Ibid.* Consequently, as a matter of fundamental due process, the right to counsel has been held to attach in certain civil matters.

For example, considering precedent establishing the right to assigned counsel of an indigent defendant subject to imprisonment in a state criminal case, the Court in *Pasqua v. Council* reviewed whether due process guarantees require a right to counsel in civil child support matters in which a defendant may be incarcerated for non-payment. 186 *N.J.* 127, 147–48, 892 *A.*2d 663 (2006). The Court, noting the adverse consequences of certain civil proceedings could be "as devastating as those resulting" from a criminal conviction, stated "[i]t is 'the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, which triggers the right to appointed counsel.' " *Id.* at 142, 892 *A.*2d 663 (quoting *Lassiter, supra,* 452 *U.S.* at 25, 101 *S.Ct.* at 2158, 68 *L.Ed.*2d at 648). The Court reinforced the established " 'presumption that an indigent

litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.'" *Id.* at 143, 892 *A.*2d 663 (quoting *Lassiter, supra,* 452 *U.S.* at 26–27, 101 *S.Ct.* at 2159, 68 *L.Ed.*2d at 649). Again, the payor's possible loss of liberty was determinative.

Further, when the power of the State is enforced against a defendant, "[u]nder the due process guarantee of the New Jersey Constitution, the right to counsel attaches even to proceedings in which a litigant is not facing incarceration." *Pasqua, supra,* 186 *N.J.* at 147, 892 *A.*2d 663. For example, defendants in a guardianship action seeking to terminate parental rights must be provided counsel if they cannot afford to hire an attorney. *N.J. Div. of Youth & Family Servs. v. B.R.,* 192 *N.J.* 301, 305–06, 929 *A.*2d 1034 (2007).[2] The Court explained

> the need for counsel in a parental termination case is evident in light of the nature of the right involved; the permanency of the threatened loss; the State's interest in exercising its parens patriae jurisdiction only where necessary; and the potential for error in a proceeding in which the interests of an indigent parent, unskilled in the law, are pitted against the resources of the State.
>
> [*Id.* at 306, 929 *A.*2d 1034.]

Also, triggering a right to appointed counsel are hearings to determine the tier classification of certain sex offenders for the purpose of reporting and registration requirements under Megan's Law, *N.J.S.A.* 2C:7–1 to –11:

> [U]nder our State Constitution, convicted sex offenders must be notified of their right to retain counsel and, if indigent, appointed counsel at Megan's Law tier classification hearings. *Doe v. Poritz,* 142 *N.J.* 1, 30–31, 106 [662 *A.*2d 367] . . . (1995). At those hearings, the court determines the scope of community notification of such information as a sex offender's name, and home and work address, by assigning the offender to one of three tiers. *Id.* at 23–25 [662 *A.*2d 367]. . . . Although sex offenders are subject only to expanded stigmatization of their reputations in their communities depending on their tier classification, they have a due process "liberty interest" protected under Article I, Paragraph 1, triggering the right to counsel. *Id.* at 30–31, 104–06 [662 *A.*2d 367].
>
> [*Pasqua, supra,* 186 *N.J.* at 147–48, 892 *A.*2d 663.]

---

[2] We note *N.J.S.A.* 30:4C–15.4(a), enacted in 1999, imposes requirements for notice of the right to counsel in guardianship actions.

*See also In re S.L.*, 94 *N.J.* 128, 137, 462 *A.*2d 1252 (1983) (holding due process guarantees the assignment of counsel to indigents in involuntary civil commitment proceedings); *N.J.S.A.* 30:4–27.11 (affording "the right to be provided with an attorney paid for by the appropriate government agency" to patients involuntarily committed to psychiatric facility who cannot afford to hire counsel).

Finally, an indigent defendant is entitled to the assignment of counsel for purposes of the State's prosecution of non-indictable offenses in the Family Part when the Family Part exercises its concurrent jurisdiction with respect to those matters. *See State v. Ashford*, 374 *N.J.Super.* 332, 337, 864 *A.*2d 1122 (App.Div.2004) (applying "[t]he longstanding rule ... applicable in municipal courts" to prosecution of contempt under *N.J.S.A.* 2C:29–9b). In *Ashford*, the defendant faced a maximum sentence of 180 days imprisonment for violating the FRO. *Id.* at 335, 864 *A.*2d 1122. Again, when a finding of contempt could result in incarceration, parties have a right to counsel and indigent defendants have a right to have counsel appointed. *Id.* at 333, 337, 864 *A.*2d 1122.

With this background, we examine D.N.'s claims that the consequences of violating the Act compel assignment of counsel for indigent defendants as well as plaintiff-victims. Following our review, we reject D.N.'s assertions and conclude indigents mounting a defense or presenting allegations of domestic violence are not entitled to appointed counsel. The entry of a domestic violence FRO, along with an order granting the additional relief available under *N.J.S.A.* 2C:25–29b, does not result in a "consequence of sufficient magnitude" to warrant the mandatory appointment of counsel. *See Pasqua, supra*, 186 *N.J.* at 147–49, 892 *A.*2d 663.

A complaint filed under *N.J.S.A.* 2C:25–28, seeking entry of a restraining order in accordance with *N.J.S.A.* 2C:25–29, also allows the court, upon a finding of domestic violence, to impose additional relief found necessary to protect the victim. The Court has emphasized the Act "sets forth the Legislature's purpose and intention in broad and unmistakable language[.]" *J.D. v. M.D.F.*,

207 *N.J.* 458, 472, 25 *A.*3d 1045 (2011). Quoting the Act, we are reminded by the Court:

"The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence."

[*Id.* at 473, 25 *A.*3d 1045 (quoting *N.J.S.A.* 2C:25–18).]

Although the Legislature has concluded a person who is found guilty of violating the Act may be subject to specific consequences designed to militate against the scourge of domestic violence, unlike the Criminal Code, the Act is designed to remediate behavior. The Act does not impose incarceration if the court finds an act of domestic violence has been committed because the Legislature had no intention to "create a new class of criminal offenses[.]" *Id.* at 474, 25 *A.*3d 1045 (citing *Kamen v. Egan,* 322 *N.J.Super.* 222, 227, 730 *A.*2d 873 (App.Div.1999); *In re M.D.Z.,* 286 *N.J.Super.* 82, 86–87, 668 *A.*2d 423 (App.Div.1995)).

The Act empowers a court to restrain a defendant's contact and communication with the victim or members of the victim's family, *N.J.S.A.* 2C:25–29b(6), (7); modify parenting time, *N.J.S.A.* 2C:25–29b(3); restrict the right to purchase or possess firearms, *N.J.S.A.* 2C:25–29b; enjoin use of a residence, *N.J.S.A.* 2C:25–29b(2); require completion of various counseling programs, *N.J.S.A.* 2C:25–29b(5); and impose civil penalties "of at least $50, but not to exceed $500[,]" *N.J.S.A.* 2C:25–29.1. However, as we noted, these provisions are designed to protect a victim from future infliction of violence. The Act does not pit the power of the State against the defendant. Rather, a putative victim of domestic violence presents evidence to the court and seeks available relief, not unlike many other remedial statutes designed to protect a specific class of plaintiffs from the wrongful conduct of another.

Arguably, one distinction drawn between the Act and other remedial legislation is the conduct regulated by the Act is ground-

ed on offenses defined in the Criminal Code. *N.J.S.A.* 2C:25–19a. *See also E.M.B. v. R.F.B.*, 419 *N.J.Super.* 177, 181, 16 *A.*3d 463 (App.Div.2011) (holding the commission of a designated criminal offense is a predicate to the entry of an FRO). Nevertheless, the Act does not concern itself with substantive criminal law and commission of a criminal offense may be found not to be domestic violence.

More important, the relief a court may grant and the remedies that are made available under the Act are curative. The Legislature made its intention clear in adopting the Act. In large measure, the Act provides tools to enable a victim "the maximum protection from abuse the law can provide" and to establish public policy to change "previous societal attitudes concerning domestic violence" and "communicate the attitude that violent behavior [growing out of a domestic situation] will not be excused[.]" *N.J.S.A.* 2C:25–18.

Accordingly, we conclude the protections of due process do not require the appointment of counsel for indigents presenting or defending a private party's civil domestic violence action. In reaching our determination, we do not minimize the serious consequences accompanying a finding of domestic violence. *See Franklin v. Sloskey*, 385 *N.J.Super.* 534, 541, 897 *A.*2d 1113 (App.Div. 2006); *Peterson v. Peterson*, 374 *N.J.Super.* 116, 124, 863 *A.*2d 1059 (App.Div.2005); *Chernesky v. Fedorczyk*, 346 *N.J.Super.* 34, 40, 786 *A.*2d 881 (App.Div.2001). Rather, we recognize the Act is remedial, not punitive, a difference that is significant.

Due process, however, does allow litigants a meaningful opportunity to defend against a complaint in domestic violence matters, which would include the opportunity to seek legal representation, if requested. *Franklin, supra,* 385 *N.J.Super.* at 540–41, 897 *A.*2d 1113. Such determinations are often fact-sensitive. We merely underscore the Court's direction that "ensuring that defendants are not deprived of their due process rights requires our trial courts to recognize both what those rights are and how they can

be protected consistent with the protective goals of the Act." *J.D. v. M.D.F.*, 207 *N.J.* 458, 479, 25 *A.*3d 1045 (2011).

Turning to the facts of this matter, we determine the trial judge adequately questioned D.N. regarding her decision to decline the opportunity to obtain legal representation. The judge asked D.N. whether she desired the opportunity to seek counsel, particularly pointing out K.M. was represented. She questioned whether D.N. understood what would result if K.M.'s request for entry of an FRO was granted, briefly outlining such possible consequences, including the civil penalty, entry in the domestic violence registry, and requirement of fingerprinting. She also advised D.N. she could request an adjournment to consult with an attorney, or to prepare for the final hearing. D.N. denied the need to do so, believing hers was the stronger case. That her confidence was ill-founded is not a basis to conclude the court erred. The record also discloses the judge had presided over prior domestic violence matters involving the parties, and D.N.'s responses, in part, reflect her familiarity with trial procedures and the results of an FRO.

On this record, we conclude D.N. understood her right to employ counsel, which she clearly and intentionally relinquished. *See Mazdabrook Commons Homeowners' Ass'n v. Khan*, 210 *N.J.* 482, 505–06, 46 *A.*3d 507 (2012) (discussing requirements for the waiver of constitutional right).

On appeal of her case, D.N. also argues all victims alleging domestic violence should be afforded counsel. Again, the Legislature adopted the Act to afford relief to victims of domestic violence. The Legislature did not intend to invoke the power of the State to prosecute civil requests for restraining orders. In any event, the Act allows law enforcement authorities, faced with probable cause to do so, to arrest and file a criminal complaint against a perpetrator, based upon the same conduct undergirding a plaintiff's civil complaint for the entry of an FRO. *N.J.S.A.* 2C:25–21.

D.N. argues the court's obligations to assure a waiver of counsel by a plaintiff presenting proof to support a domestic violence

complaint must rise to the requirements defined for a criminal defendant's knowing and voluntary waiver of counsel. *See State v. Crisafi*, 128 *N.J.* 499, 509–12, 608 *A.*2d 317 (1992) (requiring trial judges to engage in a searching inquiry with criminal defendants seeking to proceed to represent themselves). The claimed parallel is baseless. Criminal defendants are constitutionally guaranteed the right to counsel by the Sixth Amendment. *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10. The Act provides a plaintiff with a cause of action for civil relief.

The remaining arguments advanced on appeal of the order dismissing D.N.'s case are found to lack sufficient merit to warrant discussion in our opinion. *R.* 2:11–3(e)(1)(E). We note the trial judge allowed some relaxation of the formalities accompanying court hearings, but we discern no deprivation of D.N.'s due process rights. The procedure used by the trial court afforded D.N. an opportunity to present her case and to defend the allegations presented in K.M.'s case.[3] We do not agree the integrity of the fact-finding process was compromised. Under these circumstances, we conclude defendant was accorded the

---

[3] In K.M.'s case the trial judge advised D.N. she may ask K.M. questions, stating: "It's cross-examination.... You ask him questions. This is cross-examination." The judge did not repeat these instructions following K.M.'s testimony, which responded to the direct testimony in D.N.'s case. However, the trial judge stated: "Anything further [D.N.]?" Having considered D.N.'s arguments in light of the record and the applicable law, we conclude the process employed, although informal, did not deny D.N. her right to cross-examine K.M. as she suggests. *But see Peterson, supra,* 374 *N.J.Super.* at 118, 125, 863 *A.*2d 1059 (holding a defendant was deprived of his constitutional right to due process and a fair trial where an informal hearing was held, in which the trial court asked each party for his or her version of what happened and neither party was asked if he or she wished to conduct cross-examination).

We also agree K.M. related a number of statements attributed to police when discussing prior incidents of domestic violence. We agree the trial judge should not have permitted repeated hearsay statements. However, the record makes clear these statements were not considered evidential and were not relied upon to form the basis of the trial judge's decision. The testimony added to the evidence establishing knowledge, *i.e.*, that D.N. knew she was not to go to K.M.'s residence.

minimum requirements of due process. *See Doe, supra,* 142 *N.J.* 1, 106, 662 *A.*2d 367 ("Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner.").

Affirmed.