# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0947-17T1

I.H.,

    Plaintiff-Respondent,

v.

J.S.,

    Defendant-Appellant.

_____

        Submitted June 5, 2018 — Decided July 17, 2018

        Before Judges Hoffman and Gilson.

        On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FV-11-0100-18.

        Teper Law Firm, LLC, attorneys for appellant (Natalia M. Teper, on the brief).

        Respondent has not filed a brief.

PER CURIAM

    Defendant appeals from a September 12, 2017 final restraining order (FRO) entered under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on a predicate act of harassment, N.J.S.A. 2C:33-4. We are constrained to vacate and

remand for a new trial because the court neither informed defendant properly of his due process right to retain legal counsel nor did defendant waive that right.

I

During a short-term dating relationship, the parties briefly resided together, along with plaintiff's then ten-year-old daughter from a prior relationship. Plaintiff ended the relationship in May or June 2017. Thereafter, defendant called plaintiff and her daughter between five and ten times. Defendant also called the Division of Child Protection and Permanency (Division) and reported his alleged concern that plaintiff abused and neglected her daughter. On July 21, 2017, plaintiff sought and obtained a temporary restraining order (TRO) after she learned defendant had reported her to the Division. Both parties appeared for trial on August 15, 2017; however, it appears a heavy docket prevented the court from reaching the parties' case.

The matter eventually went to trial on September 12, 2017, with both parties self-represented. At the trial's onset, the judge inquired whether defendant waived his "right to be represented by an attorney . . . ." Defendant responded in the negative. The judge proceeded to discuss with defendant that he was self-represented; however, he never explicitly told defendant

he had a right to retain counsel. Specifically, the judge engaged

in the following colloquy with defendant:

> THE COURT: Okay, Now you were obviously both served because you're both here. Sir, as a defendant, I'm assuming that since you were previously served that you waived your right to be represented by an attorney here today, is that right?
>
> [DEFENDANT]: No.
>
> THE COURT: You did not waive your right to be represented by an attorney?
>
> [DEFENDANT]: No.
>
> THE COURT: So how long ago were you served? My records indicate you were served on August 15, 2017?
>
> [DEFENDANT]: Yes.
>
> THE COURT: So that's almost a month ago.
>
> [DEFENDANT]: Yes.
>
> THE COURT: So --
>
> [DEFENDANT]: I mean, the hearing was postponed because the judge was busy, so this is like new, the same hearing. This is not --
>
> THE COURT: All right. You knew the matter was pending as of August 15th, right?
>
> [DEFENDANT]: Yes, correct.
>
> THE COURT: You knew she was seeking a[n FRO], right?
>
> [DEFENDANT]: No.

THE COURT: What did you think you were here for?

[DEFENDANT]: For the first hearing, because the first hearing was postponed, the judge was very busy and gave us next, this date for hearing.

THE COURT: Right. But on August 15th you were served with a copy of the [TRO], right?

[DEFENDANT]: Was [TRO], yes, correct.

THE COURT: You were served with that document, right, on August 15[], 2017?

[DEFENDANT]: I believe so, yes.

THE COURT: Well, that's what my records indicate. So, did you want to be represented by an attorney?

[DEFENDANT]: I mean, in my opinion I don't need it because all this accusation is false and I have proof 100 percent what she is saying is not true.

THE COURT: So you're waiving your right to be represented by an attorney is what you're saying?

[DEFENDANT]: No. If I need it, I have to hire a lawyer, because it looks right now I need lawyer. I mean, because on the first hearing last month the judge postponed because he was very busy, he was sorry. He gave this date and in my mind, in the common sense, we're going to start all over. This will be like first hearing, not like final hearing for the TRO.

4

Notwithstanding defendant's responses, the judge proceeded with the trial without defendant being informed of his right to be represented or waiving his right to be represented by an attorney.

At trial, plaintiff testified she sought an FRO because defendant referred her to the Division, causing it to initiate an investigation into her parenting. She further testified that a Division worker told her "it would be a good idea to file a complaint for a restraining order against" defendant. Plaintiff also alleged defendant threatened to report her and her boyfriend to immigration authorities, and harassed her by repeatedly calling her and her daughter.

Defendant admitted to calling plaintiff; however, he claimed to have done so because plaintiff, whom he employed, failed to return to work. He testified he also called plaintiff's daughter when he discovered plaintiff's phone was disconnected. Furthermore, defendant admitted to contacting the Division, but claimed he did so out of concern for plaintiff and her daughter.

After both parties testified, the judge placed his decision on the record. Based on the "volume of calls" defendant made, the judge found defendant called plaintiff, her daughter, and the Division "with a purpose and an intent to harass the plaintiff." The judge also found it incredible that defendant called plaintiff merely to discuss work, but rather "the primary motivation was to

discuss the relationship which had just ended." Finally, the judge found an FRO "is necessary for protection of the plaintiff."

## II

On appeal, defendant, who is now represented by an attorney, argues the FRO should be vacated. In support of his position, he argues: (1) the court erred by finding there was a predicate act; (2) the court erred by finding plaintiff feared or was in danger of defendant; (3) he was denied his right to cross-examine plaintiff and submit evidentiary proofs; and (4) he was denied his right to retain counsel.

Parties to a domestic violence action are entitled to certain procedural due process rights. J.D. v. M.D.F., 207 N.J. 458, 478 (2011). Our Supreme Court has explained that "ordinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing . . . that are imposed by the statute . . . ." Ibid. (internal citations omitted). Thus, the Court stated that "ensuring that defendants are not deprived of their due process rights [in a domestic violence matter] requires our trial courts to recognize both what those rights are and how they can be protected consistent with the protective goals of the [PDVA]." Id. at 479.

A-0947-17T1

The right to seek counsel is an important due process right that affords defendants "a meaningful opportunity to defend against a complaint in domestic violence matters . . . ." D.N. v. K.M., 429 N.J. Super. 592, 606 (App. Div. 2013). In that regard, we held that due process does not require the appointment of counsel for indigent defendants in a domestic violence proceeding seeking an FRO. Ibid. Rather, due process requires that a defendant understand that he or she has a right to retain legal counsel and that a defendant is afforded a reasonable opportunity to retain counsel. Id. at 606-07.

Here the trial judge neither advised defendant of his right to retain counsel nor his ability to request an adjournment to consult with an attorney. Furthermore, defendant never waived that right; in fact, he repeatedly reserved his right to seek an attorney should he need one.

The court's failure is particularly significant in this case because the trial turned on the parties' credibility. Defendant repeatedly stated he had "records" disproving plaintiff's narrative; however, the judge never addressed defendant's attempts at entering those proofs into evidence. If defendant had counsel, counsel may have presented arguments to persuade the judge to consider defendant's evidence. Therefore, the judge's failure to question defendant carefully to ensure he understood his right to

retain counsel or request a postponement infringed upon defendant's due process rights. See, e.g., Franklin v. Sloskey, 385 N.J. Super. 534, 540-41 (App. Div. 2006).

Accordingly, we conclude the judge erred in failing to diligently ensure defendant's due process rights were respected. We further note that although we are mindful of the pressures placed upon Family Court judges attending to domestic violence matters, "[t]he volume of the calendar and the need to resolve each matter as efficiently as possible[,] should not override the serious consequences associated with the entry of a domestic violence restraining order." Chernesky v. Fedorczyk, 346 N.J. Super. 34, 40 (App. Div. 2001).

Based on our conclusion, we need not address the remaining arguments defendant advances on appeal. We therefore vacate the FRO, reinstate the TRO, and remand the matter for a new trial. We do not retain jurisdiction.

Vacated and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION