# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1350-22

C.A.,[1]

    Plaintiff-Respondent,

v.

B.M.,

    Defendant-Appellant.

_____

> Submitted November 28, 2023 – Decided February 14, 2024
>
> Before Judges Smith and Perez Friscia.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-0412-23.
>
> Fox Rothschild LLP, attorneys for appellant (Sandra C. Fava and Kory A. Crichton, on the brief).
>
> Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials in this domestic violence case to protect the identities of the parties. R. 1:38-3(b)(12).

After a trial, defendant B.M. appeals from a final restraining order (FRO) issued in favor of plaintiff C.A. under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  On appeal, defendant argues that the trial court violated his due process rights by failing to advise him of his right to retain legal counsel and failing to inform him of the consequences if an FRO were entered against him.  We reverse and remand for further proceedings consistent with this opinion.

Plaintiff and defendant had been in a dating relationship for four years. They had resided together for two years prior to ending their relationship in May 2022.  After the relationship ended, the parties remained in contact, because they shared two dogs.  On October 8, 2022, the parties attended a friend's wedding together.  At the wedding, defendant learned plaintiff was dating others. Defendant, who was intoxicated, became upset and threw multiple drinks on plaintiff.  Plaintiff testified at trial that he felt "humiliated" by the experience. Despite their altercation, after the wedding they drove to defendant's home together, where plaintiff advised he wanted no further contact with defendant.

Two days later, defendant began texting plaintiff, who in turn blocked defendant from his phone and social media accounts.  On October 21, defendant sent multiple video clips to plaintiff's family and friends, including one video

A-1350-22

depicting defendant outside plaintiff's home at 1:18 a.m. Plaintiff then applied for a temporary restraining order (TRO) against defendant.

The following Tuesday, October 25, an FRO hearing was conducted by the trial court. Neither party retained counsel, nor requested an adjournment. The court began the hearing by asking if the parties were ready to proceed. Defendant stated he wished to obtain "an FRO against [plaintiff] and three TROs against [plaintiff's] family and friends for intimidating [him]." After a brief introduction and some preliminary discussion about defendant's unsuccessful attempts to get a restraining order, the court, apparently satisfied the parties were prepared to proceed, placed them under oath and commenced questioning the parties about their history, the alleged harassment, and other relevant information.

At this point, no preliminary instructions had been provided to the parties explaining their respective rights and the consequences of the proceeding. During the hearing, defendant asked the court if his counsel—who had not entered an appearance in the matter and, as such, was not present—could introduce certain video evidence because he was "about to have a panic attack

A-1350-22

. . ." In response, the court stated, "[o]kay. Well, I asked you if you were ready to proceed, and you told me you were." Defendant responded that he was "ready to proceed . . . with the truth."

Later in the hearing, defendant told the court he had an appointment with his attorney at 5:00 p.m. Each of defendant's comments reflecting his lack of readiness to proceed went unaddressed by the court. Throughout the hearing defendant continually requested a TRO against plaintiff and members of plaintiff's family, although defendant had no complaint pending against plaintiff.

As to plaintiff's complaint against defendant, the court made findings, including that defendant had engaged in "harassing conduct . . . designed to annoy, embarrass, or harass." The court also found defendant violated the TRO by messaging plaintiff through a social media app. Even after the court concluded on the record that the facts warranted issuance of an FRO against defendant, defendant was under the clear misimpression that the hearing could result in the award of an FRO in his favor.

> COURT: . . . So[,] I am going to enter [an FRO] in favor of [p]laintiff against the defendant. So—
>
> DEFENDANT: Your Honor?
>
> COURT: Yes?

DEFENDANT: May I say one more thing?

COURT: Sure.

. . . .

DEFENDANT: I already mentioned to Your Honor that I will go ahead and talk to [my attorney], so I would beg of Your Honor to please give me the FRO . . . .

COURT: Done. Sit in the back. You got the FRO. Okay?

. . . .

DEFENDANT: Thank you, thank you, Your Honor.

COURT: You're welcome, guys.

On appeal, defendant argues the trial court violated defendant's due process rights by failing to inform him of his right to retain counsel and by failing to advise defendant of the consequences of a FRO. As both issues implicate defendant's due process rights in the FRO hearing context, we address them together.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Id. at 413. A trial judge who observes, witnesses and listens to testimony is in the best

position to "make first-hand credibility judgments about witnesses who appear on the stand." N.J. Div. of Youth & Fam. Servs. V. E.P., 196 N.J. 88, 104 (2008). However, we do not accord such deference to legal conclusions, which we review de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

"[O]rdinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing." J.D. v. M.D.F., 207 N.J. 458, 478 (2011). To "ensur[e] that defendants are not deprived of their due process rights requires our trial courts to recognize both what those rights are and how they can be protected consistent with the protective goals of the [PDVA]." Id. at 479. In this context, due process requires that a "defendant is given a meaningful opportunity to defend against a complaint" against them. D.N. v. K.M., 429 N.J. Super. 592, 606 (App. Div. 2013).

While this right does not guarantee the appointment of counsel, it does require that defendants understand their "right to retain legal counsel" and that they "receive[] a reasonable opportunity to retain an attorney." A.A.R. v. J.R.C., 471 N.J. Super. 584, 588 (App. Div. 2022). However, these protections have certain limitations. We need not apply the same extensive precautions necessary to waive the right to counsel in an FRO context as we would in a criminal

context, where the party's decision to waive their constitutional right "must be knowing, intelligent, and voluntary." Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 505 (2021). Still, PDVA defendants must have "the opportunity to seek legal representation, if requested," and whether they are given such an opportunity is based on a "fact-sensitive" analysis. D.N., 429 N.J. Super. at 606.

Given the wide range of adverse outcomes which face defendants in domestic violence proceedings, we must consider whether such defendants have been made aware of the consequences which flow from entry of an FRO against them. Certain mandatory sanctions are imposed upon an FRO's entry, such as fingerprinting, N.J.S.A. 53:1-15 and inclusion in a central registry, N.J.S.A. 2C:25-34. A defendant who has been restrained is also prevented from "purchasing, owning, possessing or controlling a firearm." N.J.S.A. 2C:25-29. In addition to mandatory sanctions, the issuing court has the discretion to impose further conditions "impairing a defendant's interest in liberty and freedom in order 'to prevent further abuse.'" A.A.R., 471 N.J. Super. at 588 (quoting Peterson v. Peterson, 374 N.J. Super 116, 124 (App. Div. 2005)). As such, "due process also requires trial courts to apprise domestic violence defendants, in

advance of trial, of the serious consequences should an FRO be entered against them." Ibid.

Here, defendant was denied the relevant due process protections required by the PDVA. The court neglected to inform defendant of his right to retain legal counsel and of the consequences that would follow the entry of an FRO against him. More than once during the trial, defendant referenced his desire to consult counsel. The trial court, for reasons that are unclear from the record, did not adjourn the proceedings to afford defendant an opportunity to retain and consult counsel.

The record also reflects defendant's clear lack of understanding about the purpose of the hearing. Defendant's statements showed that he believed he could seek a restraining order against plaintiff, a belief he maintained until the hearing's conclusion. We need not speculate whether defendant would have waived his right to counsel had he been properly advised, as our review of the record leads us to conclude he would likely have sought an adjournment and representation. As a result, the hearing conducted by the trial court was fatally flawed. We reverse the order granting plaintiff an FRO against defendant. We remand to the trial court for a new FRO hearing consistent with the guidance set forth in A.A.R., 471 N.J. Super. at 588.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION