# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3026-19

L.D.

    Plaintiff-Appellant,

v.

M.J.M.,

    Defendant-Respondent.

_____

        Submitted March 10, 2021 – Decided May 20, 2021

        Before Judges Geiger and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-1897-20.

        Rutgers Law School, attorneys for appellant (Amy Braunstein, of counsel and on the brief; Devorah Peretz, admitted pursuant to Rule 1:21-3, on the brief).

        Respondent has not filed a brief.

PER CURIAM

Plaintiff L.D.[1] appeals from a February 13, 2020 order denying her request for a final restraining order (FRO) and vacating the temporary restraining order (TRO) against defendant, M.J.M.  On appeal, plaintiff argues (1) the trial judge erred in failing to consider the "past acts" of defendant; and (2) her allegations satisfied the predicate acts of harassment and stalking pursuant to N.J.S.A. 2C:25-19(a).  Having carefully reviewed the record, and in light of the applicable law, we affirm.

We discern the following facts from the record.  The parties were in a relationship for approximately three years and have one nine-month-old child together.[2]  On January 23, 2020, defendant went to plaintiff's residence to visit their child.[3]  Defendant asked plaintiff for some medicine because he had a migraine, which she provided.  Defendant then entertained the child "probably for at least an hour or two."  While plaintiff was in her room talking on the phone, defendant knocked on her door and asked if he could get some toys and

---

[1]  We use initials to preserve the confidentiality of court records concerning domestic violence.  R. 1:38-3(d)(9).

[2]  Plaintiff also has another child who is not related to defendant.

[3]  The parties had broken up four months before the subject incident.

inquired when she was going to feed the child. Plaintiff did not answer him, so he walked back and continued to entertain the child.

After about an hour, plaintiff left her room and began preparing food for the baby. Plaintiff then asked if defendant could feed the child. Because he still had a migraine, he requested that plaintiff feed the child. Plaintiff responded, "then what are you here for?" Plaintiff went to remove the child from defendant, but he said, "stop, I'm [going] do it." Defendant eventually let the child go. Plaintiff alleges that defendant then "jumped" near her face, "inches" away, and told her "this is [the] stuff I'm talking about." Defendant, on the other hand, claims he walked over to plaintiff, picked up the food, and told her that he would feed the child. At some point, the parties apologized to each other. Defendant then fed the child and left plaintiff's residence around 9 p.m. Plaintiff did not call the police and no arrest was made.

The next day, plaintiff filed a TRO against defendant alleging harassment, N.J.S.A. 2C:25-19(a)(13), which was granted. The parties appeared pro se at a hearing on January 30, 2020. Plaintiff testified defendant would often barge into her room to see if she was cheating on him. Plaintiff also testified that defendant would "grab" her and "yell" in her face, accusing her of infidelity, often in front of the children. Plaintiff claimed that she didn't "feel safe."

3

Because plaintiff only included these allegations as a part of the prior history of domestic violence, the trial judge permitted her to amend the TRO and adjourned the matter.

Thereafter, plaintiff filed an amended TRO.[4] The amended TRO alleged that defendant has grabbed plaintiff and "threatened to really hurt her." The parties again appeared pro se at a hearing on February 13, 2020. Plaintiff reiterated that defendant would accuse her of being in relationships with other men and scream at her in front of the children. Plaintiff testified that, although he would not slap or punch her, he would "grab" her and threaten her by stating, "you're back is [going to] be up against that wall." Defendant contended that plaintiff was "embellishing her story." He denied barging into plaintiff's room or accusing her of cheating. Defendant also denied plaintiff's accusation that he would grab her. He maintained that plaintiff was actively trying to keep their child from him.

Following the close of evidence, the Family Part judge rendered an oral decision denying her request for an FRO and dismissing the TRO. The judge noted that the testimony of the parties was in "equipoise" and that the parties'

---

[4] The amended TRO purportedly included an addendum highlighting a more detailed history between the parties, but no such document is included in plaintiff's appendix.

recollection of the events on January 23, 2020 was "very consistent." The judge then analyzed the testimony adduced pursuant to the framework established under Silver v. Silver, 387 N.J. Super. 112, 126 (App. Div. 2006). The judge found the January 23, 2020 incident amounted to domestic contretemps and did not "rise to the level of harassing conduct." Even considering the prior history alleged by plaintiff, the judge determined there was insufficient evidence to prove harassment. The judge indicated the facts bespoke a "toxic relationship" which did not give rise to harassment under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. The judge issued an accompanying written order. This appeal ensued.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "Reversal is warranted only when a mistake must have been made because the trial court's factual findings

are '"so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .""" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts." Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

"[D]omestic violence is a term of art which defines a pattern of abusive and controlling behavior injurious to its victims." Peranio v. Peranio, 280 N.J. Super. 47, 52 (App. Div. 1995). In a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. at 125. The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a). Id. at 125-26. The judge must "consider the evidence in light of whether there is a previous history of domestic violence." Id. at 126. Next, the judge must determine whether a restraining order is necessary, after evaluating the factors set forth in N.J.S.A. 2C:25-29(a), "to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)).

Harassment, as defined by N.J.S.A. 2C:33-4, is one of the predicate acts of domestic violence. N.J.S.A. 2C:25-19(a)(13). Harassment occurs when one:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

"A finding of a purpose to harass may be inferred from the evidence presented" as well as from "[c]ommon sense and experience." State v. Hoffman, 149 N.J. 564, 577 (1997). Indeed, courts must be mindful that "a party may mask an intent to harass with what could otherwise be an innocent act," J.D. v. M.D.F., 207 N.J. 458, 488 (2011), and "must consider the totality of the circumstances to determine whether the harassment statute has been violated." H.E.S. v. J.C.S., 175 N.J. 309, 326 (2003) (quoting Cesare, 154 N.J. at 404).

Applying the deferential standard of review that governs this appeal, we conclude that the trial judge's findings were supported by credible evidence. The judge determined, and we agree, that there were weaknesses in plaintiff's proofs.

A-3026-19

The judge noted that, even if defendant "jumped" inches away from plaintiff's face, he did not make any threatening statements or gestures to her. Notwithstanding the fact that plaintiff testified that she was scared and asked him to leave, defendant stayed for a considerable amount of time after and ultimately fed the child. Plaintiff admitted that the parties apologized to each other after the argument. Plaintiff also acknowledged that she did not call the police after the argument. The judge found the incident to be domestic contretemps and did not constitute the predicate act of harassment.

After the first hearing, the trial judge gave plaintiff the opportunity to amend her TRO to include other specific incidents of domestic violence. Nonetheless, plaintiff's amended TRO was devoid of any specific allegations that would support a finding of harassment. Her testimony was equally vague and bereft of particularized allegations.

Where, as here, the evidence is largely testimonial in nature and hinges upon a trial judge's ability to make assessments of credibility based on his or her observation of testifying witnesses, deference is particularly appropriate. Cesare, 154 N.J. at 412. Based upon his credibility determinations and the testimony adduced at the two hearings, the trial judge determined plaintiff failed to prove, by a preponderance of the evidence, that defendant engaged in the

predicate act of harassment under <u>Silver</u>.  As such, the judge denied plaintiff's request for an FRO and vacated the TRO.  We discern no basis in the record to overturn that decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION