**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2257-19

S.S.,[1]

     Plaintiff-Respondent,

v.

B.G.,

     Defendant-Appellant.

_____

Argued May 24, 2021 – Decided June 22, 2021

Before Judges Currier and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FV-19-0215-20.

John M. Breslin argued the cause for appellant (Oller & Breslin, LLC; John M. Breslin, on the brief).

Colleen M. Cunningham argued the cause for respondent (Legal Services of Northwest New Jersey, attorneys; Colleen M. Cunningham, on the brief).

PER CURIAM

---

[1] We use initials to protect the confidentiality of the victim. R. 1:38-3(c)(12).

Defendant B.G. appeals from the December 23, 2019 final restraining order (FRO) entered against him in favor of plaintiff S.S. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. He challenges the FRO on procedural grounds only, arguing the trial court violated his due process rights by failing to inform him of his right to counsel or the consequences that could result from an FRO. Having reviewed the record in light of the applicable legal principles, we discern no due process violation and affirm.

We glean these facts from the record. On November 19, 2019, plaintiff obtained a temporary restraining order (TRO) against defendant based on a domestic violence complaint alleging harassment. The complaint, which was amended on December 6, 2019, alleged that after the parties ended their dating relationship in September 2019, for the following two months, defendant engaged in a course of harassing behavior by following plaintiff, telephoning plaintiff, and using social media applications to contact plaintiff after she repeatedly told him to leave her alone. The harassing conduct included defendant calling plaintiff ninety-eight times on November 2 and 3, 2019; following her to and from work on November 19, 2019; creating two fake social

media accounts to try to make contact with her on November 19, 2019; and threatening to kill himself in October 2019 if she did not talk to him.

On December 12, 2019, the first listing of the case since the issuance of the TRO, the parties appeared in court for an FRO hearing. Prior to the calendar call, the trial court provided the litigants, defendant included, with thorough and comprehensive preliminary instructions. Specifically, the court informed the litigants that while "domestic violence cases are serious cases . . . . [t]hey are not criminal cases" but rather "civil cases." The court explained that "because domestic violence cases are civil cases, the [c]ourt can[not] appoint a lawyer to represent either a plaintiff or a defendant." The court continued:

> However, both parties have a right to obtain an attorney if they so choose. And because domestic violence cases are serious matters, and they can be complex, and if a[n FRO] is issued against a defendant, the consequences to the professional and personal right[s] against someone who has a[n FRO] against them can be significant and long standing. It is often to the parties' interest to consider getting an attorney or retaining an attorney to represent you.

To that end, the court specifically notified all litigants that "[i]f this [was] the first time your case [was] listed for court, and you want an opportunity to consult with an attorney, let me know when your case is called, and I will give [a] brief continuance in order to do that." The court further stated:

3

I also want to alert you to the information we have available in the courthouse pertaining to the lawyer referral service. Sussex County Bar Association also has a reduced-fee program. We have information available about this program. And Legal Services of New Jersey, as well. So if you need any of that information, please let a staff member or sheriff's officer know and we'll get that . . . information to you.

The judge also told the litigants about the "consequences" of having an FRO issued against them as follows:

First, a[n FRO] will . . . remain in effect until further order of the [c]ourt.

Second, you will be unable to have any contact with the victim, including not being able to go to where that individual lives or works.

Third, you will be fingerprinted, photographed and . . . listed on the New Jersey Domestic Violence Registry, which is a registry of the names of individuals against whom a[n FRO] has been issued, and that's maintained by the Administrative Office of the Courts.

[Fourth, y]ou will be fined. Minimum is $50; the maximum is [$500].

[Fifth, y]ou will be . . . prohibited from possessing any type of weapon and most especially a gun of any type.

[Sixth, y]ou may be required to attend and complete a batterer's intervention program. You may also be required to attend a substance abuse, psychological evaluation or psychiatric evaluation, and

4

you'll be required to follow the recommendations that follow from those evaluations.

. . . .

[Seventh, y]ou may be restricted from returning to your residence or could experience other housing consequences.

[Eighth, y]ou may be ordered to pay financial relief, which might include medical bills stemming from the act of domestic violence . . . or attorney's fees.

[Ninth, t]here could be immigration consequences, as well. Your ability to travel into and outside of the United States may be affected. Your ability to obtain some professional licenses [or] certain jobs may also be affected.

. . . .

[Tenth,] a violation of a . . . no-contact provision[] in a[n FRO] is a crime for which a defendant could be arrested and charged criminally.

Now this . . . is not an exhaustive list of the consequences you may experience in your case. These are examples that I've provided you with to consider.

After reiterating that a litigant whose case was listed for "the first time" would be "grant[ed] an adjournment" to "consult or retain an attorney," the court called the cases individually. When this case was called, plaintiff's counsel represented to the court that she was just retained and requested an adjournment to prepare the case. Defendant, who was unrepresented, made no requests of the

5

court. The court granted the adjournment and relisted the case for December 23, 2019.

When the parties returned to court on December 23, 2019, prior to the calendar call, the court repeated the exhaustive preliminary instructions provided on December 12, 2019. When this case was called, both plaintiff and defendant indicated they were ready to proceed to trial. As a result, the court assigned the case to a different trial judge who, prior to proceeding with the hearing, confirmed that defendant was "proceeding . . . without being represented by counsel."

During the hearing, plaintiff testified about the parties' dating relationship,[2] the circumstances of the break-up, and the aftermath of the break-up. Plaintiff recounted the incidents referenced in her domestic violence complaint in detail and explained that defendant's "obsessive" behavior "really scares [her]." In turn, defendant admitted that his behavior constituted "harassment" for which he "apologize[d]," but stated that he had no intention of harming plaintiff. At the conclusion of the hearing, the judge credited plaintiff's testimony and determined that defendant's "course of alarming conduct" established the predicate act of harassment under the PDVA. See N.J.S.A.

---

[2] The parties were college students.

2C:25-19(a)(13).  Further, plaintiff's fear convinced the judge that "there [was] a need" for an FRO.  Accordingly, the judge entered an FRO against defendant.  See Silver v. Silver, 387 N.J. Super. 112, 125-26 (App. Div. 2006) (requiring judges adjudicating domestic violence complaints to first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19a has occurred" and then determine "whether the court should enter a restraining order that provides protection for the victim").

In this ensuing appeal, defendant, who is now represented by counsel, contends his "waiver of his right to be represented by counsel" at the FRO hearing "was not clear and knowing and a violation of his due process rights." Relying on D.N. v. K.M., 429 N.J. Super. 592 (App. Div. 2013), he argues both judges "neglected to adequately question [him] of his right to counsel" and he "was not given the opportunity to make an informed decision[] when he decided to proceed and represent himself."  Additionally, he asserts "there was no voir dire" to ascertain "whether he understood the potential consequences and how they could negatively affect his rights should the court find an act of domestic violence was committed."

Our Supreme Court has explained that "ordinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing that are imposed by the statute." J.D. v. M.D.F., 207 N.J. 458, 478 (2011) (citations omitted). In D.N., we recognized that the right to seek counsel is an important due process right that affords defendants "a meaningful opportunity to defend against a complaint in domestic violence matters . . . ." 429 N.J. Super. at 606. In that regard, we held that while due process does not require the appointment of counsel for indigent defendants in a domestic violence proceeding, due process does require that defendants understand their right to retain counsel and are afforded a reasonable opportunity to do so. Id. at 606-07. However, "[s]uch determinations are often fact-sensitive." Id. at 606.

To that end, in D.N., we found that the defendant on a cross-complaint alleging domestic violence relinquished her right to seek counsel where the trial judge "adequately questioned [her] regarding her decision to decline the opportunity to obtain legal representation." Id. at 607. There, the trial judge asked D.N. (1) whether she wanted the opportunity to obtain counsel, pointing out that the opposing party was represented; (2) whether she understood what would happen if a final restraining order was entered against her; and (3)

whether she knew that the consequences of an FRO included the imposition of civil penalties, entry in the domestic violence registry, and fingerprinting. Ibid. The judge also advised D.N. that "she could request an adjournment to consult with an attorney, or to prepare for the final hearing." Ibid.

D.N. chose to proceed without representation despite the judge's advisement. Ibid. Given the judge's advice, we held that D.N.'s waiver of her right to seek counsel was clear and knowing. Ibid. We held that "the requirements defined for a criminal defendant's knowing and voluntary waiver of counsel" does not apply to a domestic violence case. Id. at 608. We noted that D.N.'s "ill-founded" confidence was "not a basis to conclude the court erred." Id. at 607.

Here, defendant was present during two separate calendar calls during which the court explained to the domestic violence litigants in painstaking detail their right to retain counsel and the consequences of the entry of an FRO. The litigants were specifically informed that an adjournment of the case would be granted to obtain counsel particularly at the first listing of the case and were referred to the lawyer referral service and other programs available at the courthouse for information. Defendant never requested an opportunity to retain counsel nor sought a postponement despite witnessing plaintiff's counsel obtain

A-2257-19

an adjournment to prepare the case. Further, when questioned by the trial judge, defendant confirmed that he was prepared to proceed without representation.

On this record, we conclude that defendant understood his right to retain counsel but knowingly and voluntarily waived his right to do so despite being informed of the consequences of an FRO being entered against him. In D.N., we found a knowing and voluntary waiver of counsel based on the judge's individual "examination of D.N." Id. at 600. However, contrary to defendant's contention, we did not require it. Here, we are satisfied defendant was accorded the "requirements of due process." Id. at 608-09.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-2257-19