# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3556-21

K.E.E.,

    Plaintiff-Respondent,

v.

S.A.L.,

    Defendant-Appellant.

_____

Argued January 16, 2024 – Decided January 29, 2024

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-1431-22.

Brian D. Winters argued the cause for appellant (Keith, Winters, Wenning & Harris, LLC, attorneys; Brian D. Winters, on the brief).

Rachelle Ann Waitz argued the cause for respondent.

PER CURIAM

Defendant S.A.L.[1] appeals from the June 3, 2022 final restraining order ("FRO") and August 18, 2022 amended FRO entered against her and in favor of plaintiff K.E.E. pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 ("PDVA").  Following our review of the record and applicable legal principles, we affirm.

The parties were previously in an intimate relationship and share a child together.  Their relationship ended in 2010.  In February 2022, plaintiff filed a domestic violence complaint alleging harassment and was granted a temporary restraining order.  On June 3, 2022, the court conducted a trial on plaintiff's application for an FRO.  Plaintiff appeared in person and defendant appeared virtually at her request.

Plaintiff testified that on February 23, 2022, between approximately 10:25 and 10:37 p.m., defendant came to his home uninvited and knocked on the door, yelled, cursed, threatened him, and told him "[t]o come to the door or she was going to burn the house down."  Plaintiff was not home, having left for work shortly before defendant arrived.  Plaintiff's fiancée and her children were inside the residence.

---

[1] We utilize initials to protect the confidentiality of the parties.  R. 1:38-3(d)(9).

Plaintiff communicated with defendant using his cell phone through a Ring doorbell. He asked defendant to leave. When she refused, plaintiff called the police. The police arrived several minutes later and transported defendant to a hospital where she was placed in a psychiatric hold and involuntarily committed. According to plaintiff, when the police arrived defendant was "screaming, carrying on. Saying that . . . [plaintiff] sent Jehovah Witnesses to try to kill her and [their] son and that [plaintiff is] trying . . . to sleep with her." Plaintiff introduced photographs of the Ring video feed he took with his cell phone during the incident that established the incident took place between 10:25 and 10:37 p.m.

Plaintiff testified he did not give defendant his address. Plaintiff does not have a relationship with their shared child. The last time plaintiff saw defendant or their child was in 2018. Other than emails with counsel, plaintiff had no contact with defendant since their last court appearance in 2018.

Plaintiff testified that in 2017, defendant left a voicemail message on his phone that was intended for his mother. Plaintiff introduced a transcript of the voicemail, which the court read into the record. In that voicemail defendant said, in part:

> Is this b[****]? You better get [plaintiff] and tell him,
> oh, leave me the f[***] alone or you will pay for it.

3

. . . .

> I promise you, b[****], your own mother[*******] think this is game, b[****]. I know where you live. And you are going to pay for his actions. Tell that p[****] n[*****] to leave me the f[***] alone. This ain't no game. I found you before. And I'ma find you again. Show this s[***] to the cops too. . . . I'ma make you pay for the s[***] he's doing to me and my family. . . . I'ma going to get to you, b[****]. That's how the f[***] that goes. You better tell him leave me and my mother[*******] family alone. . . . See how that feels when you don't want someone to call you your f[******] phone or be in your f[******] life . . . [?] I'ma fight you back about – you better hope your daughter around to help you, b[****].

Plaintiff also testified that on November 10, 2017, defendant sent him a text message in which she wrote, "I'm going to put a bullet in your head" and "I'm going to shoot you in the f[******] head. I am not kidding. You're getting out of my li[f]e one way or another." He testified further that defendant previously harassed his mother by showing up at her place of employment and by calling her. Plaintiff also testified that in March 2018, he observed defendant and two other individuals throw eggs at the front door of his previous residence. After plaintiff moved to his current residence, he believed defendant would not be able to find him, and they would have no further contact. Plaintiff testified

4

A-3556-21

an FRO was necessary to protect him and his family, and without an FRO there would be continued acts of domestic violence.

Defendant testified plaintiff did not give her his address and she found it through court records in an unrelated lawsuit. She contended however, plaintiff previously invited her to contact him and that is why she had his permission to be at his home on February 23, 2022. Defendant also testified the parties had a pattern of going years without any contact and then reinitiating contact. According to defendant, showing up unexpectedly was something they did all the time and was nothing out of the ordinary.

Defendant testified she and plaintiff communicated sporadically and sometimes late at night about their child. These communications related to matters such as the child's health insurance and passport. According to defendant, her last email with plaintiff about the passport was in 2019 and she left voicemail messages for him relating to the passport in 2021. In defendant's view, these communications demonstrated plaintiff invited her to contact him in any manner at any time. Defendant testified that leading up to the February 23, 2022 incident, she had been trying to contact plaintiff and left him voicemail messages.

A-3556-21

Defendant introduced several text messages exchanged between the parties in 2017. The court reviewed the messages and noted, plaintiff was "not threatening or using any really offensive language, yet [defendant was] using offensive[,] co[a]rse, obscene language and . . . referencing to shoot[ing] him in the head." In one text message, defendant wrote, "stay the f[***] away from my family . . . If you don't I will kill you." Defendant further emphasized her threat by sending the following messages, one word at a time, to plaintiff: "I . . . will . . . kill . . . you . . . literally." In another text message exchange, the parties wrote:

> [Defendant:] I don't want you around. . . . If you don't get away from me, I'm going to kill you, [K.E.E.]. I'ma shoot you in your f[******] head. I am not kidding. You getting out of my life, one way or another.
>
> . . . .
>
> [Plaintiff:] Why are you going to kill me? I believe you. I am not in your life. . . . Never was. I am not around you. Only time I seen you in court.
>
> [Defendant:] Because I don't want you bothering me no more. No. I don't want you text me. I don't want you depositing your money. I don't want you binded to me, [K.E.E.]. I want you to die. Either you do it figuratively, or I'ma do it literally. I don't only see you in court.

A-3556-21

[Plaintiff:]  I want it to stay that way.  But I['m] scared for [my] life.  Can you drop court case so you can move on?  Kill me SMH [(shaking my head)]?

[Defendant:]  You don't get it.  I don't want you around at all.

Following the close of evidence, the court rendered an oral opinion.  It found plaintiff to be credible.  The court found defendant less credible, specifically noting she contradicted herself several times.  It found defendant's own proofs showed plaintiff did not want any contact with her, defendant repeatedly threatened to shoot and kill plaintiff, and defendant stated she wanted plaintiff dead.

Applying the two-step analysis set forth in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), the court found that on February 23, 2022, defendant committed the predicate act of harassment, N.J.S.A. 2C:33-4(a).  The court also determined an FRO was necessary to protect plaintiff and his family against future acts of domestic violence.

Specifically, the court found:

> plaintiff has proven by the preponderance of the evidence that [defendant] came to his home uninvited.  She was not provided with his address by [plaintiff].  That she came to the home in late evening hours . . . between 10:25 [p.m.] and 10:37 [p.m.].

7

[P]laintiff was able to engage with [defendant] . . . through the Ring doorbell. He did not invite her in. And he indicated that he is concerned for his safety in view of past threats, which there is clear evidence [for]. There's no dispute about the text messages. [Defendant] does not dispute the text messages that were sent in which she is using offensive coarse language and that she is threatening to kill him or shoot him and that she . . . wants him to die. One way or the other she wants him to die.

. . . .

The Court clearly finds that there has been a past history of domestic violence in view of those threats that she did make via text messaging.

In addition, the court finds that [plaintiff] has proven under Silver . . . that he is concerned for his safety in view of the prior threats of killing him . . . and her showing up uninvited to a home that he did not provide an address to, certainly his fear for his safety and that of his family's is a reasonable concern.

The FRO was entered on June 3, 2022. Defendant requested a stay pending the appeal, which was denied. On August 18, 2022, an amended FRO was entered vacating the imposition of a fine. Defendant moved for reconsideration, which was denied. This appeal followed.

On appeal, defendant contends: (1) the court abused its discretion in finding the predicate act of harassment; (2) the court erred as a matter of law and abused its discretion in finding the entry of an FRO was necessary to protect

plaintiff from future acts of domestic violence; and (3) the court failed to set forth appropriate findings of fact and conclusions of law.

Our scope of review is limited when considering an FRO issued by the Family Part. See D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). This court will "grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." Ibid. (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12. Deference is particularly appropriate where the evidence is largely testimonial and hinges upon a court's ability to make assessments of credibility. Id. at 412. We review de novo the court's conclusions of law. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010).

The entry of an FRO requires the trial court to make certain findings, pursuant to a two-step analysis. See Silver, 387 N.J. Super. at 125-27. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The trial court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402). Second, the court must

determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6),[2] to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b) (stating, "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse")); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011).

A person commits harassment if, with purpose to harass another, they:

> a. Make[], or cause[] to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

---

2 The six factors are:

> (1) [t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment, and physical abuse; (2) [t]he existence of immediate danger to person or property; (3) [t]he financial circumstances of the plaintiff and defendant; (4) [t]he best interests of the victim and any child; (5) [i]n determining custody and parenting time the protection of the victim's safety; and (6) [t]he existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a)(1)-(6).]

> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a-c).]

"'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience . . . ." H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) (quoting State v. Hoffman, 149 N.J. 564, 577 (1997)). The finding must be supported by "some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. at 487.

Pursuant to these principles, we affirm substantially for the reasons set forth in the court's oral opinion. We add the following comments.

Defendant's contention that the court erred in finding she committed the predicate act of harassment is not persuasive. Specifically, defendant argues her mere use of foul language is insufficient to support a finding of harassment and the court did not find a purpose to harass.

Defendant's claim that the court based its decision on nothing more than foul language is not supported by the record. The court found credible plaintiff's testimony that defendant came to his residence uninvited at approximately 10:30 p.m. and was yelling, cursing, and threatening to burn the house down. The

11

court also found, based on plaintiff's credible testimony and defendant's own admissions and text messages, there was a clear history of past threats of violence by defendant. The court's decision was based on substantial, credible evidence in the record, not solely on defendant's use of foul language.

Defendant's contention that the court did not find a purpose to harass is without merit. The court found "the plaintiff has prove[d] . . . harassment under 2C:33-4[(a)], in which a person . . . with the purpose to harass another . . . makes or causes to be made a communication or communications . . . at extremely inconvenient hours or in offensively coarse language or in any other manner likely to cause annoyance or alarm." (emphasis added). In finding defendant committed the predicate act of harassment as defined, the court determined she acted with the purpose to harass.

Defendant's claim that the court erred by finding she acted with a purpose to harass because that finding was inconsistent with her testimony is unconvincing. The court found defendant's testimony less credible than plaintiff's and determined defendant did not have permission to contact plaintiff at any time or arrive uninvited at plaintiff's home as she testified. The court's finding that defendant acted with the purpose to harass was supported by

substantial, credible evidence in the record, which showed defendant had no valid reason to come to plaintiff's residence.

Defendant's claim that the court erred as a matter of law and abused its discretion in finding the entry of a FRO was necessary to protect plaintiff from future acts of domestic violence lacks merit. Applying the second prong of Silver, the court found a FRO was necessary based on defendant's documented and undisputed history of repeatedly threatening to shoot and kill plaintiff and stating she wanted him dead, as well as her conduct on February 23, 2022. "At its core, the [PDVA] effectuates the notion that the victim of domestic violence is entitled to be left alone. To be left alone is, in essence, the basic protection the law seeks to assure these victims." Hoffman, 149 N.J. at 584. The substantial, credible evidence in the record reflects that the entry of the FRO achieved this goal.

Defendant's argument that the court did not set forth appropriately its findings of fact and conclusions of law is without merit. The court's oral opinion was detailed, thorough, and well-reasoned. The court plainly satisfied its obligations under Rule 1:7-4.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14