# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0792-22

E.S.,

    Plaintiff-Respondent,

v.

G.S., JR.,

    Defendant-Appellant.

_____

        Submitted January 29, 2024 – Decided February 8, 2024

        Before Judges Sabatino and Vinci.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-0333-23.

        Hegge & Confusione, LLC, attorneys for appellant (Michael James Confusione, of counsel and on the brief).

        Louis J. Lamatina, attorney for respondent.

PER CURIAM

Defendant G.S.[1] appeals from the September 28, 2022 final restraining order ("FRO") entered against him and in favor of plaintiff E.S. pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 ("PDVA"), and the November 1, 2022 order awarding counsel fees. Following our review of the record and applicable legal principles, we affirm.

The parties were previously married and have two children together. They divorced in August 2021. There were multiple temporary restraining orders ("TRO") sought by both parties during their separation and divorce.

On March 8, 2021, after plaintiff obtained her second TRO against defendant, the parties entered a consent order ("Consent Order") in which they agreed:

> they shall have no contact with each other . . . . No texting, [e]mail, social media[,] or face[-]to[-]face communication shall be permitted, and a violation of this provision may be grounds for [h]arassment and the reissuance of a TRO against the offending party. There shall be no communication through third parties.

Defendant also agreed he would complete an anger management program and would not apply to purchase new firearms until he completed the program.

On August 1, 2022, defendant posted publicly about plaintiff on his

---

[1] We utilize initials to protect the confidentiality of the parties. R. 1:38-3(d)(9).

Facebook page. In the post, defendant purported to explain a letter he wrote to plaintiff "about two years ago" shortly after learning of her alleged extra-marital relationships and diagnosis of borderline personality disorder. Defendant explained he copied the letter from a website and recommended resources for others involved in a relationship with someone who suffers from borderline personality disorder. Plaintiff testified she was inundated with phone calls and text messages from family and friends because of defendant's Facebook post.

On August 8, 2022, plaintiff obtained a TRO based on the post. Plaintiff then contended that after the TRO was served on defendant, he attempted to contact her through a third party, R.A. On August 10, 2022, plaintiff obtained an amended TRO prohibiting defendant from contacting her through third parties, prohibiting defendant from possessing firearms, and authorizing the seizure of any firearms in his possession. Police seized ten firearms from defendant pursuant to the amended TRO. Defendant subsequently applied for a TRO against plaintiff contending she sought the TRO solely to seize his firearms.

The court conducted a bench trial on the parties' competing FRO applications at which both parties and R.A. testified. Plaintiff testified the personal information contained in defendant's August 1, 2022 social media post

A-0792-22

was not known to others and resulted in third parties contacting her about the information disclosed in the post. Plaintiff also contended that the day after the initial TRO was served on defendant, she received an attempted Facetime call from R.A. with whom she had not spoken for two years. According to plaintiff, R.A. was actively commenting on social media about defendant's post and previously contacted plaintiff on behalf of defendant after she obtained a prior TRO.

Plaintiff testified, prior to her executing the Consent Order, defendant represented to her he had sold his firearms and was no longer in possession of any firearms. According to plaintiff, after entering the Consent Order, she learned defendant had not sold his firearms and they were still in his possession.

Plaintiff described several instances of alleged acts of domestic violence that occurred after the Consent Order was entered. On one occasion in spring 2022, plaintiff was assisting their son with his baseball equipment in the dugout when defendant came up behind her and attempted to grab an equipment bag she was holding, causing a baseball bat to strike her in the face. In November 2022, defendant sent third parties to her place of employment to harass her. In May or June 2022, plaintiff found trash piled on her car which, she contended, was something defendant previously did more than once.

4

Plaintiff also described several incidents of alleged domestic violence prior to the divorce. On one occasion, defendant entered her residence against her wishes and attempted to take the keys to the house. A struggle ensued during which defendant pushed her up against a wall in front of their young children and took the keys. On another occasion in 2019, defendant broke the back window of his truck in anger during an argument with plaintiff, also in their children's presence. In November 2019, defendant grabbed plaintiff by the neck and pushed her up against a wall. In early 2020, defendant threw a mallet in plaintiff's direction during an argument.

R.A. testified she was friends with plaintiff between 2016 or 2017 and September 2020, but the two have not spoken since. According to R.A., plaintiff never told her defendant was physically abusive, but plaintiff did tell her she obtained a TRO in 2019. R.A. denied attempting to contact plaintiff after the TRO was served on defendant in August 2022, but found a failed Facetime call on her phone to plaintiff on August 9, 2022, that R.A. attributed to a mistake by her young child.

Defendant testified his August 1, 2022 Facebook post was intended to respond to previous posts plaintiff made about him and to rebut a letter she had been passing around to people in the community and his girlfriend. Defendant

A-0792-22

denied the mallet incident and contended he broke the truck window accidentally. Defendant admitted placing trash on plaintiff's car on one occasion but denied responsibility for the incident in May or June 2022 alleged by plaintiff. Defendant testified "most of" the ten firearms seized in August 2022 were purchased after the Consent Order was entered. Defendant denied all allegations of physical violence.

Defendant testified that during their marriage plaintiff punched him in the nose twice and on many occasions grabbed him to prevent him from leaving the house, scratching his neck and chest. On one occasion plaintiff threw pieces of steel rebar at him in the garage while he batted the rebar away with a piece of lumber.

Defendant testified that because of calls placed to the New Jersey Division of Child Protection and Permanency ("DCPP") by plaintiff, DCPP contacted him "approaching a hundred times" and came to his home thirty to forty-five times in the year and one-half before the trial. Defendant also testified plaintiff called the police to make reports about him "perhaps ten times or more," the last of which was to report incorrectly defendant kicked their son out of his house.

Following the trial, the court conducted an in camera review of relevant DCPP records. On September 28, 2022, the court granted plaintiff's application

6

for an FRO and dismissed defendant's application for an FRO in a comprehensive oral opinion.

The court found the DCPP records were not consistent with defendant's testimony and reflected reports made to DCPP by both parties as well as third parties. The records did not support defendant's claim plaintiff made "incessant and ongoing" reports to DCPP. The court also found R.A.'s testimony credible and concluded she did not intentionally place a call to plaintiff on defendant's behalf.

The court found defendant's testimony less than credible. The court specifically found incredible defendant's claim that plaintiff threw rebar at him and noted the DCPP records were inconsistent with his claim regarding plaintiff's repeated calls to DCPP. The court was not persuaded by defendant's contention that plaintiff obtained the TRO solely to have his firearms seized. As a result, the court found defendant failed to prove plaintiff committed an act of harassment.

The court found plaintiff's testimony more credible. The court found defendant's August 1, 2022 social media post identified plaintiff, accused her of engaging in extra-marital affairs, and asserted she was diagnosed with borderline personality disorder. The court determined the social media post

7

violated the terms of the Consent Order, and the parties agreed such a violation may be the basis for a finding of harassment. The court found defendant committed the predicate act of harassment based on his August 1, 2022 social media post. The court was particularly concerned with the prior credible history of domestic violence and defendant's disregard of civil restraints. The court found a purpose to harass from all the attendant circumstances.

The court also found an FRO was necessary based on the previous history of domestic violence, including threats, harassment, and physical abuse, as well as the failure of civil restraints to prevent future acts of abuse. The court found credible plaintiff's testimony that she was genuinely afraid of defendant and concerned for her health, life, and safety. As a result, the court determined an FRO was necessary to prevent further abuse.

The FRO was entered on September 28, 2022. By order dated November 1, 2022, the court granted plaintiff's application for counsel fees. This appeal followed.

On appeal, defendant argues: (1) the trial court erred in finding a predicate act of harassment; and (2) there was insufficient evidence that an FRO was necessary to prevent further abuse. Defendant also argues that the award of counsel fees should be vacated if the FRO is vacated. Defendant does not appeal

from the order dismissing his own application for an FRO and does not challenge the award of counsel fees on the merits.

Our scope of review is limited when considering an FRO issued by the Family Part. See D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). This court will "grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." Ibid. (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12. Deference is particularly appropriate where the evidence is largely testimonial and hinges upon a court's ability to make assessments of credibility. Id. at 412. We review de novo the court's conclusions of law. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010).

The entry of an FRO requires the trial court to make certain findings, pursuant to a two-step analysis. See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The trial court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402). Second,

the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6),[2] to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b) (stating, "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse")).

A person commits harassment if, with purpose to harass another, they:

> a. Make[], or cause[] to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subject[] another to striking, kicking, shoving, or other offensive touching, or threaten[] to do so; or

---

[2]  The six factors are:

> (1) [t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment, and physical abuse; (2) [t]he existence of immediate danger to person or property; (3) [t]he financial circumstances of the plaintiff and defendant; (4) [t]he best interests of the victim and any child; (5) [i]n determining custody and parenting time the protection of the victim's safety; and (6) [t]he existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a)(1)-(6).]

A-0792-22

c. Engage[] in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4(a-c).]

"[A]nnoyance or alarm" has been said to mean "to disturb, irritate, or bother." J.D. v. M.D.F., 207 N.J. 458, 477 (2011) (quoting State v. Hoffman, 149 N.J. 564, 580 (1997)).

"'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience . . . ." H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) (quoting Hoffman, 149 N.J. at 577). "Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. at 487.

Pursuant to these principles, we affirm substantially for the reasons set forth in the court's oral opinion. We add the following comments. Defendant's contention that the court erred by finding a predicate act of harassment is not persuasive. Defendant admitted he was responsible for the August 1, 2022 Facebook post in which he disclosed sensitive, private information about plaintiff, including her mental health diagnosis and his allegation she engaged

11

in extra-marital affairs, intending to convey that information to people with whom plaintiff communicated. The court's finding that defendant's communication was made with the purpose to harass and annoy plaintiff is supported by adequate, substantial, credible evidence in the record, including credible evidence of a previous history of domestic violence between the parties. Moreover, the court found defendant's Facebook post violated the Consent Order. Defendant expressly agreed a violation of the Consent Order may, in and of itself, support a finding of harassment. We discern no reason to disturb the court's finding defendant committed the predicate act of harassment.

Defendant's claim that there was insufficient evidence to find an FRO was necessary to prevent further abuse is likewise unconvincing. Applying the second prong of Silver, the court found an FRO was necessary based on the established history of domestic violence including physical abuse, the failure of civil restraints to prevent further acts of abuse, and plaintiff's genuine fear of defendant. The court's determination that an FRO was necessary to prevent further abuse is supported by substantial, credible evidence in the record and will not be disturbed.

A-0792-22

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0792-22