# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1016-23

S.B.M.,

    Plaintiff-Respondent,

v.

A.F., JR.,

    Defendant-Appellant.

_____

Submitted May 22, 2025 – Decided May 30, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FV-08-0050-24.

Hark & Hark, attorneys for appellant (Michael J. Collis, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant A.F., Jr.[1] appeals from the October 26, 2023 order dismissing his temporary restraining order (TRO) against plaintiff S.M. and denying his request for a final restraining order (FRO) pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35.[2] We affirm.

Defendant and plaintiff began dating in 1997 while in high school and "had a long-term relationship into [their twenties], on again, off again." They "got back together when [they] were [thirty,] and [they] were married when [they] were [thirty-two]." They have one child from the marriage. They divorced in 2017.

On July 7, 2023, plaintiff filed a TRO against defendant. On July 12, defendant filed a TRO against plaintiff. On October 12 and 26, the court conducted a trial on their applications for FROs. Plaintiff and defendant testified at trial.

Plaintiff testified that in March 2023, defendant "was homeless," and he was residing temporarily with her and their son. Defendant stayed with plaintiff

---

[1] We use initials to protect the names of victims or alleged victims of domestic violence. R. 1:38-3(d)(10).

[2] Defendant also appealed from the October 26, 2023 FRO and August 1, 2024 amended FRO entered against him in favor of plaintiff. Because those arguments were not briefed, they are waived. Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390, 396 (App. Div. 2021).

for ten days and then left for a cruise with his then-girlfriend. Plaintiff instructed him "not to return to [her] residence." Although plaintiff was "adamant that he not come to stay at [her] home with [their] son, . . . ultimately he . . . [made] his way back into [her] home" on several occasions.

In April, plaintiff attempted to "set . . . a boundary and to ask [defendant] to get out" for good, and defendant "cursed [her] out." Over the next several months, defendant and plaintiff continued to argue about defendant's presence at plaintiff's home. Plaintiff was "[a]fraid of [defendant's] explosive behavior . . . [because] he was starting to show signs of physical violence. He kicked a laundry basked across [their] hallway right in front of [her] face and in front of [their] son . . . ." Defendant "hocked spit as if he was about to spit in [her] face. He called [her] a c*** . . . in front of [their] son . . . ." Plaintiff was afraid of defendant and felt his behavior "was absolutely escalating."

On July 7, plaintiff again asked defendant for a "deadline" when he would leave her home. She "had [her] phone in [her] purse on the side, so [she] was ready to record because [she] knew what would happen if [she] asked him . . . for a deadline or to talk about a move out date."

> And as [she] was trying to get out the door[,] he came into [her] face, . . . [she] went to get out the door[,] and [her] phone fell out of [her] purse. So[, she] exited the door as [her] body turned[,] and the phone

3

fell . . . by . . . [defendant's] feet on the other side of the door.

So[,] then the phone dropped, he had [her] phone. And [she] opened the door and said ["]give me my phone.["] . . . . [She] was trying to get [her] phone from him but he . . . was just kind of blocking [her] and pushing [her] off. He shoved [her] by [her] neck in the kitchen. He threw [her] onto the couch around the back end of the kitchen. . . . [H]e was recording with his phone[,] and [she] grabbed his phone[,] and he grabbed [her] and threw [her] into the [L]ego table. And right before [she] got his phone and . . . threw [her, she] was thinking ["]do I leave[?"] [She] was kind of pacing back and forth. . . . He[ is] a big guy. . . . He was saying get off of [him], get the [f***] off of [him]. [She] was just going for [her] phone[,] and he was just tossing [her], pushing [her] back, intimidating [her]. [She] could[ not] even go near him.

Plaintiff suffered a laceration, bruising, and swelling on her left elbow; a scratch on her face; and a cut and bruising on her legs. She "called the police" from a neighbor's house. Defendant was arrested for simple assault and removed from the residence. Plaintiff introduced audio and video recordings of the July 7 incident, as well as photographs of her injuries taken by herself and law enforcement.[3]

---

[3] The recording and photographs are not included in the appellate record.

A-1016-23

Defendant testified he has trained in taekwondo for thirty years and is a second-degree black belt. He trains police officers and military personnel in martial arts.

Defendant claimed plaintiff was "beyond jealous[]" he was dating another woman. On July 7,

> what happened . . . was she dropped her phone. [He] just went down to pick it up. And when [he] picked it up[, he] noticed that she was recording [him], which [was] no big deal [be]cause it[ was] quite common. But as [he] was picking it up[,] it was[ not] just a normal give me back your phone. It was a barrage of attacks. . . . And this is also after she . . . called the cops. She came back into the house to get her phone.

Plaintiff "attacked," "kicked," and "hit" him in an attempt to retrieve her phone. Defendant had "scratch-type marks on his . . . forearm, two on the right[,] and two on the left" as a result of the incident.

Defendant claimed plaintiff "physically attacked [him] in the past about three times over the course of the relationship." One occurred in June 2021 and another "[b]ack in 2000." He did not provide any details of the alleged incidents, but claimed he was "injured." A third incident occurred when they were "going to high school." He did not report any of the alleged incidents.

At the conclusion of the trial, defendant's counsel made what he characterized as an "unusual" argument and "ask[ed the court] to deny both

5

requests for [FROs] and let [the parties] get back to doing what they should be doing, taking care of their child."

The court entered an order denying defendant's application for an FRO and dismissing his TRO supported by an oral opinion.  It found plaintiff credible.  The court "found that [defendant] . . . was less credible, that he was intentionally evasive, particularly when questioned by [plaintiff's] counsel."

Applying the two-step analysis set forth in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006), the court first found defendant proved plaintiff committed the predicate act of simple assault.  As to the second prong of the Silver test, however, the court found defendant was not

> at risk of future acts of domestic violence from . . . [plaintiff].  [The court] d[id] not believe that [defendant] is afraid of [plaintiff] . . . .  There[ has] been no testimony from [defendant] regarding his concern, fear of . . . the likelihood of future acts of domestic violence.  In fact, he was not able to give the [c]ourt . . . an account of the previous acts of domestic violence that are mentioned in his complaint.  And even so, . . . nothing on this record lead[] [the court] to believe that he[ is] afraid of [plaintiff] and that there is a risk of future acts of domestic violence for him.

On appeal, defendant argues the court's order dismissing his TRO was "erroneous" because "once there is a finding of a physical act of domestic

A-1016-23

violence, the need [for] the [FRO] is perfunctory and self-evident." Therefore, the court's <u>Silver</u> analysis was mistaken as a matter of law.

Our scope of review is limited when considering an FRO issued by the Family Part. <u>See</u> <u>D.N. v. K.M.</u>, 429 N.J. Super. 592, 596 (App. Div. 2013). We will "grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." <u>Ibid.</u> (citing <u>Cesare v. Cesare</u>, 154 N.J. 394, 411-12 (1998)). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, [and] credible evidence." <u>Cesare</u>, 154 N.J. at 411-12 (citing <u>Rova Farms Resort, Inc. v. Investors Ins. Co.</u>, 65 N.J. 474, 484 (1974)). Deference is particularly appropriate "when the evidence is largely testimonial" and hinges upon a court's ability to make assessments of credibility. <u>Id.</u> at 412 (quoting <u>In re Return of Weapons to J.W.D.</u>, 149 N.J. 108, 117 (1997)). We review de novo the court's conclusions of law. <u>S.D. v. M.J.R.</u>, 415 N.J. Super. 417, 430 (App. Div. 2010).

The entry of an FRO requires the trial court to make certain findings, pursuant to a two-step analysis. <u>See</u> <u>Silver</u>, 387 N.J. Super. at 125-27. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." <u>Id.</u> at 125. The trial court should make

this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402).

Second, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6),[4] to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b) (stating "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse")); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011). While the second prong inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the [applicable] factors . . . to protect the victim from an

---

[4] The six factors are:

(1) [t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment, and physical abuse; (2) [t]he existence of immediate danger to person or property; (3) [t]he financial circumstances of the plaintiff and defendant; (4) [t]he best interests of the victim and any child; (5) [i]n determining custody and parenting time the protection of the victim's safety; and (6) [t]he existence of a verifiable order of protection from another jurisdiction . . . .

[N.J.S.A. 2C:25-29(a)(1)-(6).]

immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127 (citing N.J.S.A. 2C:25-29(b)).

Pursuant to these principles, we affirm substantially for the reasons set forth in the court's oral opinion. There is no basis to disturb the court's factual findings or legal conclusions. The court had the opportunity to hear and consider the testimony of the witnesses and assess their credibility. Its factual findings are supported by substantial, credible evidence, and those facts were correctly applied to the law.

Defendant's contention the court was required to grant an FRO because the predicate act of simple assault involves physical force lacks merit. Although issuance of an FRO is "most often perfunctory and self-evident" when the predicate act involves "the use of physical force and violence," A.M.C. v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016) (quoting Silver, 387 N.J. Super. at 127), it is by no means required in all such cases.

"[T]he commission of any one of the predicate acts . . . does not automatically warrant issuance of a domestic violence restraining order . . . ." Silver, 387 N.J. Super. at 124. In R.G. v. R.G., we reaffirmed that principle, explaining "the trial court must find a predicate offense and also find a basis, upon the history of the parties' relationship, to conclude the safety of the victim

is threatened[,] and a restraining order is necessary to prevent further danger to person or property." 449 N.J. Super. 208, 224 (App. Div. 2017) (citing Silver, 387 N.J. at 125-26). The second prong of the Silver two-part test "reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened. This is the backdrop on which defendant's acts must be evaluated." Id. at 229 (quoting Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995)).

We are satisfied the court's determination defendant was not at risk of future acts of domestic violence by plaintiff is amply supported by the record. As it noted, defendant "was not able to give the [c]ourt . . . an account of the previous acts of domestic violence . . . mentioned in his complaint." The court's finding that "nothing on this record leads [it] to believe that [defendant is] afraid of [plaintiff] and that there is a risk of future acts of domestic violence for him" is entitled to substantial deference on appeal. We discern no basis to disturb the court's conclusion an FRO was not necessary to protect plaintiff "from immediate danger or to prevent further abuse." See Silver, 387 N.J. at 127. The court properly denied defendant's application for an FRO.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

10

A-1016-23